# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| THOMAS BALLARD, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN AIRLINES, INC., a Delaware corporation,<br><br>Defendant. | Case No. 17-cv-02534<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thomas Ballard, on behalf of himself and all others similarly situated, sued Defendant American Airlines, Inc., claiming breach of oral contract, estoppel, fraud, unjust enrichment, and negligent misrepresentation. Defendant moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiff's claims are all preempted under the Railway Labor Act. For the reasons explained below, Defendant's motion is granted.

### I.     Factual Background & Procedural History

Plaintiff's First Amended Complaint (FAC) [20] sets forth the following relevant facts, which the Court accepts as true for purposes of Defendant's motion. Prior to his employment with American, Plaintiff worked as an aviation maintenance technician for twenty-four years and earned more than $30.00 an hour. FAC, ¶ 6. After learning about American's "Hiring Program," which offered years-of-service credit and top-of-scale pay rates for new hires, Plaintiff applied to

work at American. *Id.* ¶ 7. In March of 2015, Plaintiff interviewed with American for an aviation maintenance technician position. *Id.* ¶ 8. American told Plaintiff during the interview that, if employed by American, he would have to join the Transportation Workers Union of America, AFL-CIO, the labor union representing American employees; Plaintiff did not meet with a Union representative, and did not receive any Union documentation, at that time. *Id.* American hired Plaintiff at the end of the interview, and gave Plaintiff a hiring letter dated March 24, 2015. *Id.* ¶ 9. Plaintiff accepted the position and began working for American in June 2015 at a starting wage of $25.70 an hour. *Id.* ¶¶ 7, 10-11. Consistent with the discussion at his interview, Plaintiff then became a member of the Union.

Approximately two months after Plaintiff started the job, American informed the Union that it was discontinuing the Hiring Program under which Plaintiff was hired. *Id.* ¶ 12. Plaintiff alleges that American knew it was going to discontinue the Hiring Program when it hired him, but failed to tell him it planned to do so. *Id.* ¶ 13.

Plaintiff alleges that American and the union met in August 2016 to negotiate the collective bargaining agreement and, that American announced that, as of August 5, 2016, it would no longer honor agreements with employees hired under the Hiring Program. *Id.* ¶¶ 15, 17-18. American later extended that date to November 5, 2016. *Id.* ¶ 16. As a result of this decision, employees (like Plaintiff) who had not met their years of service prior to the discontinuation date had to work

additional years before they could achieve the top-of-scale pay promised under the Hiring Program. *Id.* ¶ 19.

Plaintiff alleges that American pulled a fast one, and that its refusal to honor the benefits it agreed to under the Hiring Program constitutes a breach of contract. *Id.* ¶¶ 19-20, 23. Plaintiff contends that American "never had any intention of honoring its Hiring Program" and that American "knew or should have known" when hiring Plaintiff and the Class that it "intended to cancel, revoke, rescind, and/or breach their agreement with Plaintiff and the Class." *Id.* ¶ 21.

On February 28, 2017, Plaintiff sued American in state court, claiming breach of contract, equitable estoppel, promissory estoppel, fraud and unjust enrichment. American removed the case to this Court on April 3, 2017 and moved to dismiss. *See* [12]. In response, Plaintiff elected to amend his complaint; he filed an amended class action complaint on May 24, 2017. *See* [20]. Plaintiff's amended complaint, filed on behalf of himself and the class of persons who, from 2014 to the date of judgment, were hired by American and, as new hires, were credited with years of service and top-of-scale pay rates, claims breach of oral contract, equitable estoppel, promissory estoppel, fraud, unjust enrichment, and negligent misrepresentation. *See id.*

American again moved to dismiss under Rules 12(b)(6) and 12(b)(1). *See* [27]. American argues that Plaintiff's claims should be dismissed under Rule 12(b)(6) because they are preempted under the Railway Labor Act (RLA) and thus fail to state a claim. Alternatively, American argues, the claims should be

dismissed under Rule 12(b)(1) because Plaintiff's claims are all "minor disputes" subject to the exclusive jurisdiction of the Board of Adjustment established by American and the Union.

## II. Legal Standard

A motion under Rule 12(b)(6) tests the sufficiency of the complaint under the plausibility standard, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), not the merits of the suit, *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To meet the plausibility standard, "the complaint must supply 'enough fact to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiffs allegations." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in Plaintiff's complaint and draws all reasonable inferences in his favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013). These same standards apply when evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1). *Silha v. ACT, Inc.,* 807 F.3d 169, 174 (7th Cir. 2015) (citations omitted).

## III. Analysis

### A. Preemption Under the Railway Labor Act

The RLA requires air carriers to negotiate "rates of pay, rules, and working conditions" with their employees' collective bargaining representatives. 45 U.S.C. §151 *et seq*. Accordingly, the entire collective bargaining process is governed by federal law through the RLA. In 1959, the Supreme Court established, in *San*

4

*Diego Building Trades Council v. Garmon*, that when an activity is governed by the National Labor Relations Act, state and federal courts must defer to the National Labor Relations Board and all state and federal claims are preempted. 359 U.S. 236, 244-45 (1959). In 1969, the Court extended preemption to the Railway Labor Act in *Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369 (1969). Thus, where the collective bargaining negotiation process is governed by federal law through the RLA, the collective bargaining process under the RLA is subject to *Garmon* preemption.

Under *Garmon*, any activity protected or prohibited under the RLA remains subject to the primary jurisdiction of the RLA Board, and this Court loses its subject matter jurisdiction–that is, this Court's federal subject matter jurisdiction is preempted. *See Garmon*, 359 U.S. at 245 (finding any conduct protected or prohibited by the NLRA is subject to the primary jurisdiction of the NLRB and states are ousted of all jurisdiction). In order to allow the exclusive competence of the Board to decide national policy, *Garmon* preemption has a "broad scope," *Duffer v. United Cont'l Holdings, Inc.*, 173 F. Supp. 3d 689, 717 (N.D. Ill. 2016) (citing *Kaufman v. Allied Pilots Ass'n*, 274 F.3d 197, 200, 202-03 (5th Cir. 2001)), which maintains "uniformity and singularity of remedy provided by federal law." *Kaufman*, 274 F.3d at 203 (5th Cir. 2001); *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 661 (7th Cir. 1992) (finding preemption maintains uniform interpretation of collective bargaining agreements and promotes consistent resolution of labor-management disputes). *Garmon* preemption, however, is not

5

absolute. For example, *Garmon* does not preempt claims if the regulated activity is "merely of peripheral concern to the federal labor laws" or if it "touches interests deeply rooted in local feeling and responsibility." *Cannon v. Edgar*, 33 F.3d 880, 884 (7th Cir. 1994) (citing *Belknap, Inc. v. Hale*, 463 U.S. 491, 498 (1983)).

American argues that Plaintiff's claims directly challenge collective bargaining negotiations, which are governed by the RLA, and thus are preempted. Plaintiff disagrees, arguing that his claims arise not from any CBA, but from an individual oral agreement made before Plaintiff was hired and before Plaintiff became a union member.

*Espinal v. Northwest Airlines*, 90 F.3d 1452 (9th Cir. 1996), is instructive. There, the plaintiff alleged that the defendant airline made misrepresentations that induced him to resign his current job and relocate to begin working for the defendant; a month after the move, defendant rescinded its offer of employment based upon a CBA provision that plaintiff had not seen until after he moved and started working for defendant. *Id.* at 1455. Plaintiff sued, claiming, among other things, that defendant breached the hiring contract entered into before plaintiff learned about the CBA. *Id.* at 1458-59. Defendant moved to dismiss based upon preemption, and plaintiff argued that preemption did not apply because his claim arose prior to the commencement of coverage under the CBA—that is, his claim arose not under the CBA, but under his individual employment agreement. *Id.* at 1458. The Ninth Circuit disagreed, noting that, under well-established precedent, "any individual contract that conflicts with a CBA must be superseded by that

6

CBA." *Id.* at 1458-59 (citing *J.I. Case Co. v. NLRB*, 321 U.S. 332, 335–39 (1944)). Thus, even assuming that plaintiff had an enforceable hiring contract with defendant, the CBA superseded that agreement to the extent the contracts differed, and extinguished any rights plaintiff may have enjoyed beyond those provided by the CBA. *Id.* at 1459. As a result, the contractual claims were preempted. *Id.*

Here, in an attempt to avoid preemption, Plaintiff argues that he and American entered into an oral contract during his hiring interview, and that this breached contract existed independently of the CBA. As in *Espinal*, however, the CBA extinguished any such individual agreements when Plaintiff became a union-represented employee and received the collectively-bargained rights in the CBA. In short, preemption applies and any claim Plaintiff may have relating to the terms of his employment must be pursued within the procedures established in the CBA.

Similarly, Plaintiff's state-law claims are also preempted. In *Local 174, Teamsters v. Lucas Flour Co.*, the Supreme Court held that "uniform federal law" must govern the negotiation of labor agreements and the resolution of labor disputes, and thus it must preempt state law tort and contract claims. 369 U.S. 95, 103 (1962). *See also Talbot*, 961 F.2d at 661-62 (fraud and misrepresentation claims preempted because they directly depend on the CBA); *Gibson v. AT & T Techs., Inc.*, 782 F.2d 686, 688 (7th Cir. 1986) (state law fraud claims are preempted because they directly depended on the CBA). Like his contract claim, Plaintiff's estoppel, fraud, unjust enrichment, and negligent misrepresentation claims all arose from the collective bargaining negotiations in August 2016, memorialized in the CBA and the

7

2016 Letter of Agreement between the Union and American, which effectively changed the terms of Plaintiff's employment. As a result, none of these claims falls within any recognized exception to *Garmon*, and thus, preemption applies. *Garmon*, 359 U.S. at 243-44; *Belknap*, 463 US at 498.

In *Belknap*, an employer hired non-union replacement workers and promised them permanent employment. 463 U.S. at 494-96. When the employer settled the strike with its union employees, however, it laid off the non-union replacement workers, who then filed state actions for breach of contract and misrepresentation. *Id.* The Supreme Court held that the misrepresentation action constituted only a peripheral concern to the Board and federal law, and the state had a substantial interest in protecting its citizens from harmful misrepresentations, therefore, preemption did not apply. *Id.* at 510-11.

This case is not *Belknap*. Significantly, the employees in *Belknap* were non-union workers when hired and remained non-union at all times; Plaintiff here was non-union when hired, but became a union-represented worker after hire, accepting the CBA's benefits and agreeing to be bound by its terms. The union represented Plaintiff and his co-workers in the collective bargaining negotiations that resulted in the amended CBA and the 2016 Letter of Agreement. Collective bargaining negotiations like this are not merely of "peripheral concern" to the Board and federal law. Rather, these negotiations are central to the purpose of the RLA, which expressly governs negotiations of "rates of pay, rules, and working conditions"

8

between their employees' collective bargaining representatives and employers. 45 U.S.C. §151 *et seq*.

### B. "Minor Disputes"

In light of the preemption finding above, this Court need not address Defendant's theory that this Court lacks jurisdiction because Plaintiff's claims are "minor disputes" requiring interpretation of the CBA, and thus, are within the exclusive jurisdiction of boards of adjustment. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994) (citing *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 562 (1987); 45 U.S.C. § 151a).

### IV. Conclusion

For the reasons explained above, the Court finds that Plaintiff's claims are preempted by the RLA. Accordingly, American's motion to dismiss [27] is granted, and this case is hereby dismissed. Civil case terminated.

Date: December 18, 2017

                                            Entered:

                                            John Robert Blakey
                                            United States District Judge